UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROY KEENAN,

          Plaintiff,

   v.

BNSF RAILWAY COMPANY, a Delaware corporation,

          Defendant.

CASE NO. C07-130BHS

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BNSF RAILWAY COMPANY'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

This matter comes before the Court on Defendant BNSF Railway Company's Motion for Summary Judgment (Dkt. 60) and Plaintiff's Motion for Partial Summary Judgment (Dkt. 69). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants in part and denies in part the motions for the reasons stated herein.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Roy Keenan was employed as a crane operator for BNSF Railway Company ("BNSF") from 1970 to 2003 and primarily operated a Little Giant truck crane. Dkt. 81, Exh. A at 14, 17.

ORDER - 1

In 1989, Mr. Keenan was diagnosed by BNSF[1] with severe hearing loss in his right ear and moderate or mild hearing loss in his left ear but was approved to work. Dkt. 61, Exh. C at 43; Dkt. 61, Exh. E at 46.

On March 30, 1993, Mr. Keenan executed a release, which provides in part as follows:

> 1. In consideration of $40,000.00, I release and discharge Burlington Northern Railroad Company, its successors, predecessors, agents, and employees ("BN"), from any and all claims, suits, demands, actions, damages, costs and expenses of any kind, known or unknown, which I have by reason of occupational hearing loss, hearing impairment, tinnitus, or hearing disorders of any type, including any increased risk of hearing disorder.
>
> 2. I understand that the injuries and illnesses listed in paragraph 1 of this release are or may be permanent. I further understand that these injuries or illnesses may progress, and that recovery therefrom is uncertain and indefinite. It is my intention to release BN from any and all future consequences of said injuries or illnesses.
>
> ***
>
> 7. I understand and agree that this Release is intended as a final settlement of all claims, known or unknown, involving the illnesses or injuries listed in paragraphs 1 and 2 above.

Dkt. 61, Exh. B at 41.

In 1995, BNSF tested Mr. Keenan's hearing and found no significant change in his hearing. Dkt. 79, Exh. H at 46. BNSF's hearing preservation program recommended that Mr. Keenan consult a physician regarding his hearing. Dkt. 61, Exh. F at 49. Mr. Keenan consulted a physician at the Everett Clinic and was diagnosed with moderate to severe hearing loss. Dkt. 61, Exh. A at 38. Mr. Keenan believed that his hearing loss was caused by his employment. *Id.* at 38-39. Mr. Keenan was offered hearing aids but reportedly was "subjectively without complaint." Dkt. 79, Exh. I at 52.

BNSF tested Mr. Keenan's hearing in 1998 and again found no significant change. Dkt. 79, Exh. H at 46; Dkt. 79, Exh. K at 55. BNSF tested Mr. Keenan's hearing in 2002,

---

[1] For purposes of this order, the Court refers to BNSF only by its present name.

2003, and 2004, and found no change since his baseline examination. Dkt. 79, Exh. H at 49-51; Dkt. 79, Exh. E at 39.

In his deposition, Mr. Keenan indicated that his hearing loss has worsened in the months and years preceding his deposition. Dkt. 79, Exh. A at 33.

Mr. Keenan asserts the following: (1) negligence under the Federal Employers' Liability Act ("FELA"), (2) negligent aggravation of pre-existing hearing injuries, (3) accumulative effects, (4) negligent assignment to tasks exposing Plaintiff to injurious levels of noise, (5) mutual mistake of fact as to the 1993 release of hearing loss claims, (6) invalidity of the 1993 release under 45 U.S.C. § 55, (7) failure to disclose material facts with respect to the 1993 release, (8) equitable estoppel, and (9) rescission. Dkt. 1 at 2-9.

## II. STATUTORY FRAMEWORK

The FELA, 45 U.S.C. §§ 51-60, provides certain railroad employees with a private cause of action for job-related injuries caused by an employer's negligence:

> Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury . . . resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

45 U.S.C. § 51; *Bay v. Western Pac. R. Co.*, 595 F.2d 514, 515 (9th Cir. 1979). The FELA was enacted to create a tort remedy for railroad workers suffering injuries on the job and to enable injured railroad workers to overcome traditional defenses to liability such as contributory negligence, contractual waiver, the fellow-servant rule, and assumption of the risk. *Lewy v. Southern Pacific Transp. Co.*, 799 F.2d 1281, 1287 (9th Cir. 1986). The statute is to be construed liberally in favor of the protection of railroad workers. *Id.* at 1288. The FELA is intended to be flexible and adaptive:

ORDER - 3

> But instead of a detailed statute codifying common-law principles, Congress saw fit to enact a statute of the most general terms, thus leaving in large measure to the courts the duty of fashioning remedies for injured employees in a manner analogous to the development of tort remedies at common law. But it is clear that the general congressional intent was to provide liberal recovery for injured workers, [citation omitted], and it is also clear that Congress intended the creation of no static remedy, but one which would be developed and enlarged to meet changing conditions and changing concepts of industry's duty toward its workers.

*Kernan v. American Dredging Co.*, 355 U.S. 426, 432 (1958).

A FELA claim may be premised upon breach of a duty of care analogous to the common law duty or upon breach of a duty imposed by statute. *Id*. In 1994, the Ninth Circuit determined, as a matter of first impression, whether violation of Occupational Safety and Health Administration ("OSHA") standards constitutes negligence *per se* under the FELA: "OSHA standards may be admitted in a FELA case as some evidence of the applicable standard of care. Such evidence, however, is to be considered only in relation to all other evidence in the case, and a violation of an OSHA regulation is not negligence *per se*." *Robertson v. Burlington Northern R. Co.*, 32 F.3d 408, 410-411 (9th Cir. 1994).

The Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701 *et seq*. (formerly the Boiler Inspection Act), supplements the FELA. *Urie v. Thompson*, 337 U.S. 163, 188 (1949). The Federal Railroad Administration ("FRA") is responsible for the administration and enforcement of railroad safety laws such as the LIA. *Forrester v. American Dieselelectric, Inc.*, 255 F.3d 1205, 1207 (9th Cir. 2001). The failure to comply with LIA standards constitutes negligence *per se* under the FELA. *Urie*, 337 U.S. at 188-89 and n.30; *Forrester*, 255 F.3d at 1210 n.2. A plaintiff pursuing this theory is "required to prove only the statutory violation and thus is relieved of the burden of proving negligence." *See Crane v. Cedar Rapids & Iowa City Ry.*, 395 U.S. 164, 166 (1969). The plaintiff is not required to offer evidence of proximate cause and need only prove that the injury resulted "in whole or in part" from the railroad's violation of LIA standards. *Id.*; *see* 45 U.S.C. § 51.

## III. DISCUSSION

Defendant seeks summary judgment on the following grounds: (1) Plaintiff's claims for relief are barred as a matter of law because Plaintiff voluntarily settled any and all claims for occupational hearing loss in the 1993 release; (2) Plaintiff's attempts to invalidate the 1993 release are time barred under Washington law; (3) Plaintiff's claims are time barred under the FELA; (4) Plaintiff's claims are barred by the laches defense; and (5) Plaintiff's claim for damages based on negligent assignment of work tasks is barred as matter of law because such a claim is governed by the seniority provisions of the Collective Bargaining Agreement between BNSF and Plaintiff. Dkt. 60.

Mr. Keenan seeks partial summary judgment on issues of liability and causation, contending that Defendant cannot rebut Mr. Keenan's allegations of negligence or support its affirmative defenses because BNSF has failed to timely identify experts who will offer testimony at trial. Dkt. 69. This argument is rendered moot by the Court's Order Denying Plaintiff's Motion to Strike Defendant's Expert Witness Disclosures (Dkt. 78). Mr. Keenan also contends that BNSF does not comply with OSHA and FRA regulations and asks the Court to rule as a matter of law that such failure constitutes negligence *per se*.

**A.    SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v.*

ORDER - 5

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.    VALIDITY OF 1993 RELEASE**

By statute, devices intending to exempt a common carrier from liability under the FELA are void:

> Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void: Provided, That in any action brought against any such common carrier under or by virtue of any of the provisions of this chapter, such common carrier may set off therein any sum it has contributed or paid to any insurance, relief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought.

45 U.S.C. § 55. The Ninth Circuit has summarized the intent behind this statutory provision as follows: "Congress' purpose in enacting [this provision] was to create a 'shield' against a railroad's defense that an employee had contracted away his right to sue the railroad for personal injuries and not to provide a 'sword' for a separate suit against the railroad. Congress indicated that it wished to 'void' contracts 'discharging the company from liability for personal injuries'; such contracts had become almost a standard practice in the railroad industry." *Bay*, 595 F.2d at 516. This provision does not invalidate a fair compromise of FELA claims.

A FELA release may also be set aside on the grounds of fraud, insufficient consideration, and mutual mistake. *Counts v. Burlington Northern R. Co.*, 952 F.2d 1136, 1142 (9th Cir. 1991). The determination of whether a FELA release is valid is governed by federal law. *Maynard v. Durham & S. Ry. Co.*, 365 U.S. 160, 161 (1961). Where release is pleaded as a defense, the burden of proof is on the employee to establish by a preponderance of the evidence that the release is invalid. *Callen v. Pennsylvania R. Co.*, 332 U.S. 625, 629-30 (1948). If the facts are in conflict concerning the intent and effect of the release, its validity must be decided by a jury. *See Dice v. Akron, C. & Y. R. Co.*, 342 U.S. 359, 363 (1952).

A FELA release may be invalidated when both parties execute it under a mutual mistake regarding the nature and extent of an injury. *See Graham v. Atchison, T. & S.F. Ry. Co.*, 176 F.2d 819, 825 (9th Cir. 1949); *Great Northern v. Fowler*, 136 F. 118, 120 (9th Cir. 1905). While a mistake as to the future duration or effects of an injury "form[s] no basis for the avoidance" of a release, a mistake as to the nature or seriousness of an injury may. *Fowler*, 136 F. at 122; *Graham*, 176 F.2d at 825.

In this case, BNSF contends that the 1993 release bars the claims in this case because Mr. Keenan's mistaken belief as to the expected effect of injuries sustained before the 1993 release does not invalidate the release. Dkt. 61 at 9-12. Mr. Keenan contends that his claims in this matter stem from a new injury sustained after the 1993

release was executed or from an aggravation of injuries occurring before the release. Dkt. 79 at 12. In his response, Mr. Keenan contends that he does not seek to invalidate the 1993 release on the grounds of fraud, misrepresentation, or mistake. Dkt. 79 at 14 n.4 ("A release can also be invalid on grounds of fraud, misrepresentation, or mutual mistake of fact. Plaintiff is not seeking to invalidate the release on these grounds."). Rather, Mr. Keenan contends only that the injury that is the subject of this lawsuit is outside the scope of the 1993 release and that to hold otherwise would contravene 45 U.S.C. § 56.

There is a genuine issue of material fact as to whether M. Keenan's present injury is distinct from, or an aggravation of, the injury covered by the 1993 release. *See, e.g.*, Dkt. 79, Exh. P at 82; Dkt. 69-2, Exh. K at 62. The Court therefore concludes that issues of fact preclude a ruling on the validity of the 1993 release under 45 U.S.C. § 55.

In Count V of the complaint, Mr. Keenan contends that the 1993 release is invalid due to mutual mistake of fact. Dkt. 1 at 4-5. In Count VII, Mr. Keenan contends that the release is invalid due to failure to disclose material facts. *Id.* at 6-7. In Count IX, Mr. Keenan seeks to rescind the 1993 release due to "Defendant's omission, breach of duties to disclose, and/or failure to disclose material facts." *Id.* at 9. In response to BNSF's motion, Mr. Keenan contends only that the 1993 release does not apply to his current injury and specifies that he is not seeking to invalidate the release on the grounds of fraud, misrepresentation, or mutual mistake of fact. Dkt. 79 at 14 n.4. Accordingly, BNSF's motion is granted as to Counts VI, VII, and IX of the complaint, and these claims are dismissed.

**C.    STATUTES OF LIMITATIONS**

BNSF contends that Mr. Keenan's claims are barred by the three-year statute of limitations governing FELA claims and by Washington's six-year statute of limitations for breach of contract claims. Dkt. 61 at 12-13.

### 1.   Applicable Statute of Limitations

The statute of limitations for FELA claims is three years. 45 U.S.C. § 56. The FELA's limitations period begins to run "only when the accumulated effects of the deleterious substance manifest themselves." *Urie v.* 337 U.S. at 170. In other words, the injury accrues when the employee knows or has reason to know of the injury and its cause. *See id.* ("The record before us is clear that [the plaintiff] became too ill to work in May of 1940 and that diagnosis of his condition was accomplished in the following weeks. There is no suggestion that [the plaintiff] should have known he had silicosis at any earlier date.").

BNSF contends that Mr. Keenan's attempt to avoid the FELA release is governed by Washington's six-year statute of limitations for contract actions, RCW 4.16.040. Dkt. 61 at 12-13. The parties do not dispute that the validity of a FELA release is governed by federal law. *Maynard*, 365 U.S. at 161. BNSF offers no legal authority for applying Washington's statute of limitations to Mr. Keenan's attempt to avoid the 1993 release, and the Court declines to do so.

### 2.   Equitable Esoppel

The doctrine of equitable estoppel applies to FELA claims. *Atkins v. Union Pacific R. Co.*, 685 F.2d 1146, 1148 (9th Cir. 1982). Defendants generally bear no duty to inform the injured employee of the statute of limitations but a defendant's conduct or representations tending to provide the employee with a false sense of security may estop the defendant from raising the statute of limitations as a defense. *Id.*

To determine whether equitable estoppel applies, courts focus primarily on a defendant's actions in preventing a plaintiff from filing suit and consider factors such as whether the plaintiff actually relied on the defendant's representations, whether such reliance was reasonable, whether there is evidence that the defendant's purpose was improper, whether the defendant had actual or constructive knowledge that its conduct

was deceptive, and whether the purposes of the statute of limitations have been satisfied. *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1177 (9th Cir. 2000).

In this case, Mr. Keenan contends that BNSF's conclusion that his hearing had not changed in 1998, 2002, 2003, and 2004 constitutes grounds for estoppel. Without evidence as to whether BNSF's purpose was improper, whether BNSF knew its conclusion to be incorrect or deceptive, and whether Mr. Keenan relied on BNSF's conclusion, the Court declines to apply the doctrine of equitable estoppel.

### 3. FELA's Statute of Limitations

BNSF contends that this case is similar to *Mounts v. Grand Trunk Western R.R.*, 198 F.3d 578 (6th Cir. 2000). In *Mounts*, a railroad employee filed suit against his former employer for violation of the FELA. *Mounts*, 198 F.3d at 579. The railroad began to conduct regular hearing tests of employees in the 1980s. *Id.* In 1989, the employee's hearing was tested, and the employee was notified that he was suffering from hearing loss. In April of 1990, the employee reported subjective complaints of hearing loss over a period of time. In July of 1990, Mounts settled a hearing loss claim against the railroad. In 1993, an audiogram conducted by the railroad showed hearing loss, and additional tests confirmed the employee's hearing loss. A medical test in 1996 revealed that the employee's hearing had worsened, and the employee was removed from service and encouraged to apply for a permanent disability annuity for his hearing impairment. *Id.* at 580. In 1998, the employee commenced suit against the railroad under the FELA and alleged that the 1990 release was occasioned by fraud or, alternatively, mutual mistake. The district court dismissed the FELA claims as time barred and dismissed the remaining claim as dependent upon the FELA claims. The Sixth Circuit affirmed, holding that the discovery rule applicable to FELA claims required evidence of a separate injury occurring within the limitations period. *Id.* at 581. Because the employee knew of his hearing loss and its cause in 1993 and believed the injury to be attributable to his employment, the court held that the employee's 1998 suit was time barred. The Sixth Circuit characterized

ORDER - 10

the continuing tort doctrine as an exception to the discovery rule and declined to apply the doctrine in the FELA context. *Id.* at 583.

In this case, Mr. Keenan knew as early as 1995 that he was suffering hearing loss and attributed the loss to his employment. It is unclear, however, when Mr. Keenan's post-1993 injuries, or aggravation of his pre-existing injury, occurred. On a motion for summary judgment, the Court is not free to merely assume that Mr. Keenan knew in 1995 that his injury was new or worse. Taken in the light most favorarable to Mr. Keenan, the nonmoving party, the facts suggest that Mr. Keenan first became aware of the injury underlying this case in the months and years preceding his deposition, and Mr. Keenan's complaint is therefore not time barred.

**4.     Laches**

Laches is an equitable affirmative defense that has two components. First, there must be evidence that the party against whom the defense is asserted acted without diligence. *Huseman v. Icicle Seafoods, Inc.*, 471 F.3d 1116, 1125 (9th Cir. 2006). Second, and most importantly, there must be evidence that the party asserting the defense has suffered prejudice as a result of the delay in filing suit. *Id.* at 1125-1126. Because the laches defense is dependent upon the facts and circumstances of a particular case, the Supreme Court has held that applying laches to FELA claims "would be at variance with the policies of certainty and uniformity underlying [the FELA's] statute of limitations." *Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 435 (1965). The Court therefore declines to apply the equitable defense of laches to Mr. Keenan's FELA claims. Moreover, to the extent that laches may bar Mr. Keenan's attempt to rescind the 1993 release, whether Mr. Keenan was diligent in bringing this claim and the extent to which BNSF has been prejudiced as a result are factual considerations for the jury. *See Graham*, 176 F.2d at 827 (whether rescission of FELA release was timely or barred by laches was an issue for the jury).

### D. NEGLIGENT WORK ASSIGNMENT

BNSF seeks summary judgment on Mr. Keenan's negligent work assignment claim, contending that even if Mr. Keenan suffered a hearing loss injury and such injury constituted a disability within the meaning of the Americans with Disability Act, summary judgment is warranted because Mr. Keenan admits that BNSF complied with the seniority provisions of the collective bargaining agreement and because any reassignment that requires violation of a collective bargaining agreement is *per se* unreasonable. Dkt. 61 at 20-23.

Mr. Keenan's negligent assignment claim is as follows:

> 14. During the term of his employment, Defendant negligently assigned Plaintiff to work tasks exposing Plaintiff to excessive levels of noise causing occupational hearing loss.
> 15. Plaintiff's injury and damages were caused in whole, or in part, by the negligence of Defendant assigning Plaintiff to work with and near machinery, tools, and equipment which emitted hazardous levels of noise and/or Defendant failed to protect Plaintiff against work site noise.
> 16. At all times relevant, Plaintiff was unaware of the latent, insidious, cumulative injuries caused by his work-related repetitive exposures. He did not know the existence and/or cause of his injuries more than three years prior to the commencement of this action, or, in the alternative any applicable statute of limitations is tolled by Defendant's continuing negligent assignment of Plaintiff to work tasks known to expose Plaintiff to injurious and excessive levels of noise.
> 17. As a direct result of Defendant's negligence, Plaintiff has experienced disability, pain and suffering, medical expenses and a loss in his quality of life. Plaintiff will continue to incur such damages and experience pain, suffering and other general damages in the future.

Dkt. 1 at 4. As Mr. Keenan's negligent assignment claim does not implicate the Americans with Disabilities Act, the Court declines to grant summary judgment on the negligent assignment claim.

### E. NEGLIGENCE PER SE

Plaintiff moves for partial summary judgment, contending that BNSF's violation of several regulations constitutes negligence *per se*. Dkt. 69. As explained in more detail below, the Court concludes that there are genuine issues of material fact precluding summary judgment in this regard.

ORDER - 12

### 1.    Inclusion in Hearing Conservation Program

Mr. Keenan contends that when he was hired in 1960, he should have been included in BNSF's hearing conservation program but was not so included until 1990. Dkt. 69 at 10-12. Mr. Keenan contends that BNSF did not test his hearing annually, did not provide him with sufficient hearing protection in a timely manner, and did not provide him with safety training regarding hearing preservation. *Id.* at 6-8.

Under OSHA, inclusion in a hearing conservation program is required for employees exposed to at least 85 decibels of noise as a time-weighted average. 29 C.F.R. § 1910.95(c). David M. Lipscomb, Ph.D., testified in his deposition that he recommends that all employees participate in a hearing protection program. Dkt. 81, Exh. E at 42. Dr. Lipscomb testified that employees who are exposed to 85 decibels or less as a time-weighted average are not required to participate in a hearing protection program, that hearing protection would be mandatory for employees who are exposed to 90 decibels or more as a time-weighted average, and that for employees who are exposed to between 85 and 90 decibels as a time-weighted average, the employer must conduct annual testing and must make hearing protection available. *Id.* BNSF's Manager of Industrial Hygiene, Donald Cleveland, confirmed in his deposition that 85 decibels is the action level at which BNSF conducts audiometric tests and offers hearing protection and that 90 decibels is the level at which training is required and hearing protection is mandatory. Dkt. 81, Exh. G at 52.

There is a material issue of fact as to whether Mr. Keenan was exposed to "an 8-hour time-weighted average sound level (TWA) of 85 decibels" sufficient to trigger OSHA's hearing conservation program requirement. *See* 29 C.F.R. § 1910.95(c). When BNSF purchased the Little Giant truck crane operated by Mr. Keenan, BNSF's specifications provided that noise levels were not to exceed 85 decibels, and the machine BSNF purchased met that qualification. Dkt. 81, Exh. B at 28. According to data referenced by Alice H. Suter, Ph.D., Plaintiff's proffered expert, noise emitted from

ORDER - 13

truck-mounted cranes can vary from 76 to 83 decibels. Dkt. 81, Exh. C at 34. In March of 2008, Gerald McCaskill tested the crane previously operated by Mr. Keenan and confirmed Dr. Suter's opinions. Dkt. 81, Exh. D at 35, 38. According to Mr. McCaskill's testing, the noise levels of the crane cab were below 85 decibels. Dkt. 81, Exh. D at 40.

On the other hand, Plaintiff's proffered expert, Dr. Suter, opines that Mr. Keenan was exposed to noise levels above 85 decibels:

> Mr. Keenan reports that he was exposed to loud noise from many types of equipment, sufficient that he needed to shout to be heard, which is indicative of noise levels well above 86 decibels. With some kinds of equipment, such as bull dozers and front-end loaders, which can emit noise levels well over 100 decibels, he reports that spoken communication was not possible at all.

Dkt. 69-2, Exh. K at 61. In addition, Burlington Northern acknowledged in 1983 that 90% of its machine operators were exposed to noise at levels of 85 decibels or more. Dkt. 99, Exh. C at 39. This factual dispute cannot be resolved at the summary judgment stage.

### 2. Failure to Test Mr. Keenan's Crane

Mr. Keenan contends that BNSF failed to test the noise levels of the machines he operated while employed by BNSF. *See* 49 C.F.R. § 227.103; 29 C.F.R. § 1910.95(d)(1). With respect to this allegation, Mr. Keenan is charged with proving a negative. To do so, Mr. Keenan contends that BNSF has failed to identify any testing efforts. Dkt. 69 at 6; *see also* Dkt. 69-2, Exh. K at 62 (Dr. Suter contending that "Mr. Keenan's noise exposure was never measured with either a dosimeter or sound level meter, and he was never told about his exposure levels or noise dose.").

In response to Plaintiff's showing, BNSF contends that it conducts industrial hygiene sampling to create a representative sample. Dkt. 81, Exh. I at 57. In support of this proposition, BNSF has filed more than 5,000 pages of documents. *See* Dkts. 85-87, 89-92. BNSF's opposition fails to cite specific portions of this lengthy exhibit. It is not the Court's responsibility "to scour the record in search of a genuine issue of triable fact." *See Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The Court instead "rel[ies] on the nonmoving party to identify with reasonable particularity the evidence that precludes

ORDER - 14

summary judgment." *Id.*; *see also Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir. 1982) ("A party may not prevail in opposing a motion for summary judgment by simply overwhelming the district court with a miscellany of unorganized documentation.").

While there is some evidence indicating that BNSF conducted surveys of various types of equipment during several different time periods at various locations, BNSF fails to refer to any specific samples or to create a genuine issue of material fact as to whether its testing created a representative sample. The Court therefore rules as a matter of law that BNSF did not perform noise level assessments of Mr. Keenan's work environment. In this limited respect, Plaintiff's motion is granted. This finding does not necessitate a ruling of negligence *per se*, however. *See Robertson*, 32 F.3d at 410-411 (violation of OSHA standards is evidence of the applicable standard of care but does not constitute negligence *per se*); 49 C.F.R. § 227.103 (requiring implementation of a noise monitoring program in 2008 or 2009, depending upon the classification of the railroad).

**3.    Failure to Attenuate Noise**

Mr. Keenan contends that BNSF failed to utilize administrative or engineering controls to reduce sound levels. *See* 29 C.F.R. § 1910.95(b)(1) ("When employees are subjected to sound exceeding those listed in Table G-16, feasible administrative or engineering controls shall be utilized."). Because there is a genuine issue of material fact as to the level of noise to which Mr. Keenan was exposed, the Court cannot rule as a matter of law whether BNSF's failure, if any, to utilize administrative or engineering controls was negligent.

**4.    Failure to Notify Plaintiff of Standard Threshold Shift**

Mr. Keenan contends that BNSF failed to comply with certain procedures after he sustained a "standard threshold shift" in his hearing in 1995. Dkt. 69 at 6; *see* 49 C.F.R. § 227.109(h); 29 C.F.R. § 1910.95(g). There is a question of fact as to whether Mr. Keenan actually experienced a standard threshold shift.

ORDER - 15

Dr. Suter, Mr. Keenan's proffered expert, opines that Mr. Keenan experienced a standard threshold shift in his left ear in 1995. Dkt. 69-2, Exh. K at 62. George A. Gates, M.D., BNSF's proffered expert, compared Mr. Keenan's 1991 and 2004 audiograms and concludes that Mr. Keenan's hearing in his right ear has improved with two exceptions: an insignificant reduction of 5 decibels at 4kHz and a reduction of 20 decibels at 8kHz. With respect to Mr. Keenan's left ear, Dr. Gates concludes that Mr. Keenan's hearing in his left ear has not significantly changed with the exception of a 20-decibel reduction at 8kHz. Dr. Gates concludes that the 20-decibel reduction at 8kHz noted in both ears "is not unexpected given his age and smoking history." Dkt. 81, Exh. J at 63. Dr. Gates also concludes that Mr. Keenan suffered a dramatic loss of hearing in his right ear in 2007 and that such loss is "presumably from the effects of his occluded right internal carotid artery." *Id.*

Cassandra Colville, an Occupational Audiologist for Examinetics, Inc., concludes that Mr. Keenan did not suffer a standard threshold shift in either ear between 1991 and 2004. Dkt. 81, Exh. L at 69. The Court therefore declines to rule as a matter of law that Plaintiff experienced a standard threshold shift and that BNSF's actions in response to such a shift constitute negligence *per se*.

**5.  Conclusion**

There are several factual issues to be resolved at trial, including the level of noise to which Mr. Keenan was exposed while working for BNSF, the extent of Mr. Keenan's hearing loss, and the cause of Mr. Keenan's hearing loss. Plaintiff tacitly acknowledges that this matter cannot be resolved at the summary judgment stage:

> The only **credible** evidence regarding Plaintiff's noisy work environment are the documents referred to in Plaintiff's Motion, those attached hereto, and the testimony of Plaintiff and his co-workers. To **believe** Defendant's arguments, the Court would have to discount the testimony of Plaintiff and his co-workers, Defendant's regional track sound surveys, and documents regarding its machine operators exposed to hazardous noise. The Court would then have to buy into the idea that Defendant had no duty to properly and effectively administer its HCP to Plaintiff because he should never have been included in the program in the first place.

Dkt. 99 at 6 (emphasis added). Matters of credibility are the province of the jury.

### F. CONTRIBUTORY NEGLIGENCE

Plaintiff asks the Court to rule as a matter of law that Plaintiff was not negligent because injured employees cannot be held contributorily negligent when a common carrier violates a statute enacted for the safety of its employees. Dkt. 69 at 12; *see* 45 U.S.C.A. § 53 ("no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."). Because the Court cannot rule as a matter of law whether BNSF violated any safety statutes with respect to Mr. Keenan, the Court declines to rule as a matter of law whether Mr. Keenan may be held contributorily negligent.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that Defendant BNSF Railway Company's Motion for Summary Judgment (Dkt. 60) is **GRANTED in part** and **DENIED in part**, and Plaintiff's Motion for Partial Summary Judgment (Dkt. 69) is **GRANTED in part** and **DENIED in part** as provided herein.

DATED this 12th day of June, 2008.

BENJAMIN H. SETTLE
United States District Judge